**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**LAKE EOLA BUILDERS, LLC,**

                **Plaintiff,**

-vs-                                                        **Case No. 6:05-cv-346-Orl-31DAB**

**THE METROPOLITAN AT LAKE EOLA, LLC,**

                **Defendant.**

_____

# ORDER

This matter came before the Court after a hearing on the summary judgment motion (Doc. 53) filed by the Defendant, The Metropolitan at Lake Eola, LLC ("Metropolitan"). In resolving this motion, the Court has also considered the memorandum in opposition (Doc. 55) filed by the Plaintiff, Lake Eola Builders, LLC ("LEB").

**I.    Background**

Except as noted, the following facts are undisputed. Metropolitan approached Pertree Constructors, Inc. ("PCI") regarding an upcoming construction project. (Doc. 55-2 at 4). PCI's principals opted to set up a new legal entity – LEB – to undertake the project. (Doc. 55-2 at 4). According to the records of the Florida Department of State, Division of Corporations, LEB was formed in November of 2003. J. Michael Pertree ("Pertree") and Andrew Owens ("Owens) served as manager members of LEB, with Owens also serving as registered agent. Owens (vice president) and Pertree (president, secretary, treasurer) were officers in PCI.

Metropolitan and LEB entered into a contract on December 9, 2003 under which LEB would act as general contractor for the renovation of the Downtown Orlando Sheraton Four Points Hotel (the "Four Points project"). (Doc. 53 at 2). LEB did not file its application for a certificate of authority (in essence, a general contractor's license) until February 20, 2004 (Doc. 55 at 20), and did not receive the certificate until June 18, 2004 (Doc. 55 at 18). The parties disagree as to whether Metropolitan was aware of LEB's certification status when the contract was signed.

According to LEB, it commenced work on the Four Points project on December 29, 2003. (Doc. 2 at 3). Approximately one year later, Metropolitan terminated LEB from the project. (Doc. 5 at 21). On January 12, 2005, LEB recorded an amended claim of lien for monies it contended it was due under the contract. (Doc. 2 at 4).

On February 3, 2005, LEB filed suit against Metropolitan for breach of contract and to foreclose a $925, 411.27 construction lien. (Doc. 2). Citing diversity jurisdiction, Metropolitan removed the case to this Court (Doc. 1) and filed a counterclaim against LEB for, *inter alia*, breach of contract. (Doc. 5 at 22-25). On June 8, 2005, Metropolitan amended its answer, adding an affirmative defense based on LEB's alleged failure to comply with Florida law governing licensing requirements for contractors. (Doc. 30). Metropolitan now moves for summary judgment on that affirmative defense, contending that LEB was not properly licensed on the effective date of the contract and is therefore statutorily barred from attempting to enforce it.

## II.     Summary Judgment Standard

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

The Court must consider all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolve all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The Court is not, however, required to accept all of the non-movant's factual characterizations and legal arguments. *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458-59 (11th Cir 1994).

**III.   Application**

Chapter 489, Florida Statutes, governs the licensing, registration, and certification of construction contractors. Pursuant to that chapter, an individual who wishes to engage in construction contracting must pass an examination and otherwise demonstrate his or her qualifications to receive either a certificate of competency, which allows contracting statewide, or

register with the Department of Business and Professional Regulation ("DBPR"), which allows contracting in a particular jurisdiction.  Section 489.113(1).[1]  A business organization, such as LEB, that wishes to engage in construction contracting must apply for a certificate of authority to do so through a "qualifying agent".  Section 489.119(2).  A qualifying agent must be, among other requirements, a certified or registered contractor.  Section 489.119(3)(a).  For a business organization to receive a certificate of authority, it must designate a primary qualifying agent[2] who has final approval authority for all construction work performed by the organization.  Section 489.119(2)(a)(1).

---

[1] Unless otherwise noted, all statutory references are to the 2005 edition of the Florida statutes.

[2] Under chapter 489, there are two types of qualifying agent.  The first is a primary qualifying agent, defined as

> a person who possesses the requisite skill, knowledge, and experience, and has the responsibility, to supervise, direct, manage, and control the contracting activities of the business organization with which he or she is connected; who has the responsibility to supervise, direct, manage, and control construction activities on a job for which he or she has obtained the building permit; and whose technical and personal qualifications have been determined by investigation and examination as provided in this part, as attested by the department.

Section 489.105(4).  The second is a secondary qualifying agent, defined as

> a person who possesses the requisite skill, knowledge, and experience, and has the responsibility to supervise, direct, manage, and control construction activities on a job for which he or she has obtained a permit, and whose technical and personal qualifications have been determined by investigation and examination as provided in this part, as attested by the department.

Section 489.105(5).

-4-

Section 489.128(1) declares that, as a matter of public policy, "contracts entered into on or after October 1, 1990, by an unlicensed contractor shall be unenforceable in law or in equity by the unlicensed contractor."

An individual contractor is to be considered unlicensed for purposes of Section 489.128 if he or she "does not have a license required by this part concerning the scope of the work to be performed under the contract." Section 489.128(1)(a). In contrast, the statute specifies that the lack of a certificate of authority is not grounds for considering a business organization to be unlicensed. Section 489.128(b). Rather, a business organization contractor is to be considered unlicensed if it "does not have a primary or secondary qualifying agent in accordance with this part concerning the scope of the work to be performed under the contract." Section 489.128(1)(a). Finally, the statute provides that the contractor's licensing status is to be assessed as of the effective date of the contract except under circumstances not present here. Section 489.128(1)(c).

Thus, to determine whether LEB may enforce its contract with Metropolitan, the Court must decide whether LEB should be considered "licensed" as of December 9, 2005 – and, more particularly, whether LEB had a primary or secondary qualifying agent in accordance with Chapter 489 as of that date. Unfortunately, Chapter 489 does not define what it means for a business organization to "have" a qualifying agent.

It is undisputed that LEB had not even filed its application for a certificate of authority as of December 9, 2003. LEB's certificate of authority was not issued until June 18, 2004. (Doc. 53 at 18). Recognizing that the lack of a certificate, alone, is not enough to compel a finding that LEB was unlicensed, Metropolitan argues that LEB's failure to even apply for a license by that date requires the same result. Simply stated, Metropolitan argues that, as a matter of law, an

organization cannot "have" a qualifying agent for purposes of Section 489.128 until it files its application in accordance with the requirements of that section.  Metropolitan also argues that previous versions of Section 489.128 allowed contractors to "cure" their lack of a license after entering into the contract, thereby gaining the ability to enforce it. *See, e.g.*, *Kvaerner Construction, Inc. v. American Safety Casualty Insurance Co.*, 847 So.2d 534, 536 n.3 (Fla. 5th DCA 2003) (discussing amendment of Section 489.128).  Metropolitan argues that allowing LEB to be considered licensed in this case would contradict the Legislature's intent – in effect, reading the deleted cure provision back into the statute.

Neither of these arguments is persuasive.  By directing courts to look at whether an organization has a qualifying agent rather than whether it has the necessary paperwork to demonstrate this fact, the Legislature has expressed a preference in Section 489.128 for substance over form.  Making the mailing date of the application dispositive reverses these priorities.  As for Metropolitan's "cure" argument, if an organization has a qualifying agent on the proper date, it is entitled to enforce its contract, leaving nothing to cure.

Section 489.128 was created "to protect the public from the activities of incompetent contractors." *Kvaerner Construction* at 536.  *See also Poole & Kent Co. v. Gusi Erickson Constr. Co.*, 759 So.2d 2, 6 (Fla. 2d DCA 1999) (stating that legislative history of Section 489.128 "suggests that the statute is intended to address the problems that consumers and the public face due to shoddy work by unlicensed, unqualified contractors.").  As such, the Court finds that the best method for determining whether LEB should be considered licensed is to determine whether LEB had a qualified contractor who was responsible for the Four Points project beginning with the effective date of the contract. Construing the evidence in the light most favorable to LEB, the

Court finds that LEB has at least created a disputed issue of material fact as to this point. Owens – a licensed general contractor at all relevant times – signed the contract on behalf of LEB. (Doc. 5-2 at 37). According to Pertree's affidavit, Owens supervised and was responsible for the Four Points project from its beginning. (Doc. 55-2 at 5).

In addition, Owens linked himself to the Four Points project by pulling the building permit. (Doc. 55-2 at 5). A qualifying agent has a duty to supervise the organization's construction projects. *Murthy v. N. Sinha Corp.*, 644 So.2d 983, 985 (Fla. 1994). When a qualifying agent pulls a permit for a particular project, he has associated himself with the project, and "has a duty to supervise construction and not to willfully or deliberately disregard and violate local building codes." *Hunt v. Department of Professional Regulation*, 444 So.2d 997, 999 (Fla. 1st DCA 1994). Unless another qualifying agent is assigned to supervise the project or otherwise assumes responsibility, the qualifying agent who pulled the permit remains obligated to supervise it, even if he states that he had nothing to do with the project. *Id.*

The foregoing evidence would support a conclusion that Owens, a licensed general contractor, was responsible for the Four Points project beginning with the effective date of the contract. As such, that evidence would support a conclusion that LEB should be considered licensed for purposes of Section 489.128.

The Court finds further support for this proposition in Section 489.119(3)(a), which governs, among other things, the requirements for a business organization when its sole qualifying agent ends his or her affiliation with it. The statute provides the business organization with 60 days "in which to employ another qualifying agent." § 489.119(3)(a). Further, the business organization "may not engage in contracting until a qualifying agent is employed," unless one of

its principals personally obtains a certificate or registration.  § 489.119(3)(a).  Once the business organization has employed another qualifying agent, the statute does not require additional paperwork before it may engage in contracting.  In other words, the focus is on the qualifications of the individual(s) working for the organization rather than the paperwork.  Although the situation of a departing qualifying agent is not perfectly analogous to that of the instant case, it is sufficiently similar to suggest that a similar result is warranted.

Because disputed issues of material fact remain as to the status of LEB's license on the effective date of the contract, Metropolitan is not entitled to summary judgment.[3]  In consideration of the foregoing, it is hereby

**ORDERED** that the summary judgment motion (Doc. 53) filed by the Defendant, The Metropolitan at Lake Eola, LLC, is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on February 22, 2006.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party

---

[3] For now, the Court's conclusion renders it unnecessary to resolve LEB's argument that Metropolitan knew about the licensing issue and is estopped from raising it in these proceedings.  The same holds true for the issue of whether Metropolitan's counterclaim for breach of contract had the effect of reaffirming the contract.