**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**LAKE EOLA BUILDERS, LLC,**

        **Plaintiff,**

-vs-                                              Case No. 6:05-cv-346-Orl-31DAB

**THE METROPOLITAN AT LAKE EOLA, LLC,**

        **Defendant.**

## ORDER

This matter comes before the Court on the second motion for summary judgment (Doc. 89) filed by Defendant The Metropolitan at Lake Eola, LLC ("Metropolitan") and the memorandum in opposition (Doc. 98) filed by the Plaintiff, Lake Eola Builders, LLC ("LEB").

**I.    Background**

Metropolitan, as owner, and LEB, as general contractor, entered into a guaranteed maximum price contract (the "Contract") on December 9, 2003 to convert a downtown Orlando hotel into condominiums. (Doc. 89 at 2). As written, the Contract had a maximum price of $5,996,358.00 (later increased to $6,382,799.00) and a substantial completion deadline of 180 days. (Doc. 89 at 2). In December of 2004, Metropolitan fired LEB from the project. Shortly thereafter, LEB filed suit for breach of contract and to foreclose a $925,411.27 construction lien. Metropolitan now moves for summary judgment on both claims.

**II.     Standards**

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

The Court must consider all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolve all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255.  The Court is not, however, required to accept all of the non-movant's factual characterizations and legal arguments. *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458-59 (11th Cir 1994).

**III.   Legal Analysis**

   **A.   Breach of the Contract**

Simply stated, LEB contends that it was entitled to several hundred days' worth of extensions to the original deadline for substantial completion and that it was still within this extended performance "window" – and therefore not in breach of the Contract – when it was terminated by Metropolitan in December 2004. Metropolitan challenges LEB's entitlement to any time extensions by pointing to Section 7.3.2 of the General Conditions of the Contract, which provides that

> If the Contractor wishes to make a claim for an increase in the Contract Time, written notice as provided herein shall be given within ten (10) days after occurrence of the event giving rise to the delay. Contractor shall submit its claim within thirty (30) days of the notice set forth above, and if such notice or claim is not provided in writing within the time required in this Section, any claim shall be deemed waived by the Contractor. The Contractor's claim shall include an estimate of cost and of probable effect of delay on progress of the Work. In the case of a continuing delay, only one claim is necessary.

Relying on the affidavit (Doc. 89-2) of the sole member of its managing LLC, Metropolitan contends that LEB never provided timely notice or a timely claim in regard to at least four of the extensions to which it now claims entitlement. (Doc. 89 at 7-8). The four extensions[1] would extend the substantial completion deadline by a total of 89 days. (Doc. 89 at 7-8). With those 89 days taken out of the equation, Metropolitan argues, LEB was well beyond the substantial

---

[1] The four extensions at issue, as described on Table III-1 of LEB's expert report (the "Trauner Report"), consist of number 7 (27 days for late inspections), number 9 (39 days for added asbestos remediation), number 11 (7 additional days for added asbestos remediation) and number 13 (16 days for late drawings). Doc. 89-11 at 26.

completion deadline (even if its other requested extensions were to be granted) and therefore in breach of the Contract when it was terminated in late December of 2004.[2]  (Doc. 89 at 8).

LEB offers several responses to Metropolitan's argument.  LEB points to a host of e-mails and meeting minutes containing notices of events causing delays and, at least in some cases, estimates of the extent of the resulting delays.  (Doc. 115 at 6-9).  LEB also cites a September 17, 2004 memo (Doc. 89-12 at 46-48) written by Metropolitan's project manager that documents knowledge of various delay-causing issues.  These documents raise a genuine issue of material fact as to what notice Metropolitan received and whether such notice was sufficient to satisfy the requirements of the Contract.

LEB also points to a number of smaller delays that were subsumed within larger delays for which extensions are now being sought.  (Doc. 115 at 10).  For example, LEB's expert opined that a series of hurricanes delayed construction while asbestos remediation was also delaying construction.  (Doc. 115 at 10).  LEB contends that if some larger delays, such as the asbestos remediation delay, are unrecoverable due to lack of notice, LEB would be still be entitled to extensions for the smaller delays, such as the hurricane delays, of which (LEB alleges) Metropolitan had notice.  (Doc. 115 at 11).  LEB also notes that the building permit for the penthouse portion of the project was delayed until October 1, 2004.  (Doc. 115 at 12).  Given that, according to Section 4.1 of the Contract, the substantial completion deadline of 180 days was

---

[2] More specifically, Metropolitan argues that the parties originally established June 26, 2004 as the substantial completion date (Doc. 89 at 3), that LEB is seeking 227 days of extension beyond that date, and that subtracting 89 days from the 227 would result in a substantial completion date no later than the middle of November, 2004 – more that 30 days before LEB was terminated from the project.  (Doc. 89 at 8).  LEB does not dispute these figures, though it does dispute its alleged lack of entitlement to the 89 days.

"based on the building permit having been issued by the governmental authority having jurisdiction over the Project by the Date on which the Notice of Commencement is received" (Doc. 5-2 at 11), and given that at least one of the necessary building permits was not issued until October 2005, it is at least arguable that the substantial completion deadline should have been some time in March of 2005, several months after LEB was terminated.

And even if the foregoing were not enough to preclude the issuance of summary judgment as to the notice issue, LEB argues – as is typical in these cases – that the owner either waived its right to demand strict performance of the Contract or that the parties orally modified its terms. *See*, *e.g.*, *Horovitz v. Levine*, 755 So. 2d 687 (Fla. 4th DCA 1999) ("time is of the essence" proviso in settlement agreement waived where appellants allowed appellees to expend money and resources to finish parking lot 45 days after completion date, appellants knew appellees were continuing to work on the parking lot after the completion date and did not object to their presence, and appellants enjoyed use and benefit of finished parking lot) *and RDP Royal Palm Motel, L.P. ex rel PADC Hospitality Corp. I v. Clark Construction Group, Inc.*, 2006 WL 373492 (11th Cir. 2006) (concluding that, under Florida law, plaintiff waived right to enforce substantial completion date and "time is of the essence" provision of contract by allowing date to pass without setting new deadline and continuing to issue change orders and directives requiring defendant to perform additional work) *and Beach Higher Power Corp. v. Granados*, 717 So. 2d 563, 565 (Fla. 3d DCA 1998) (stating that "[t]he law has clearly been established that a written contract may be modified by a subsequent oral agreement or subsequent conduct of the parties, even though the written contract purports to prohibit such modification" and citing cases). The record in this case is replete with evidence that, if believed, tends to show that Metropolitan waived its right to

demand adherence to the June 26, 2004 substantial completion deadline or that the parties orally agreed to modify portions of the Contract, such as the notice provisions of Section 7.3.2. As such, Metropolitan is not entitled to summary judgment on LEB's breach claim.[3]

**B.     Lien Claim**

Section 713.31(2), Florida Statutes, provides that a construction lien is fraudulent, and therefore entirely unenforceable, when the lienor has "willfully exaggerated the amount for which such lien is claimed" or "willfully included a claim for work not performed ... or materials not furnished". Pursuant to § 713.31(2)(b), however, "a minor mistake or error in a claim of lien, or a good faith dispute as to the amount due does not constitute a willful exaggeration." According to Metropolitan, LEB included several items in its $925,411.27 lien claim that render it fraudulent.

    1.     Penthouse work

According to Metropolitan, LEB's last pay application reflected that work on the nine penthouse units was 79 percent complete, leading LEB to include $119,071.00 in its lien claim for unpaid work on the penthouses. (Doc. 89 at 11). However, Metropolitan says its completion contractor, American Lifestyle, estimated that the penthouse work was only 35 percent complete when it took over the job, and although only $198,074.00 remained in the budget for penthouse work, Metropolitan incurred expenses of $567,235.00 from American Lifestyle. In Metropolitan's view, this demonstrates that LEB dramatically overstated its progress on the penthouses, rendering its lien claim – which included monies owed as a result of penthouse work – fraudulent.

---

[3]Metropolitan makes a similar failure-of-notice argument in regard to LEB's claim for extended general conditions (Doc. 89 at 9), which fails for the same reasons as its argument regarding the claim for an extension of time.

-6-

Metropolitan's argument on this score suffers from a number of flaws, however. First, there is no evidence presented from which the Court could determine which contractor (if either) was correct as to the percentage of completion. Second is the apparent apples-and-oranges nature of the numbers presented. There is no obvious relationship between the amount of penthouse work LEB is alleged to have performed, the amount of money allegedly remaining in the budget for such work, and the amount of money paid to some other contractor for doing some or all of the penthouse work LEB was obliged to perform – and perhaps other work besides, for all the Court can tell. And even if the Court were able to determine, as a matter of law, that LEB only completed 35 percent of the penthouse work rather than the 79 percent for which it claimed a lien, Metropolitan has presented no evidence that would lead the Court to find, as a matter of law, that such discrepancy was the result of a willful misrepresentation rather than honest disagreement or mistake.

      2.     <u>Electrical work</u>

Metropolitan next complains that LEB included more than $68,000 in its claim of lien for work that it never performed, such as replacement of emergency and exit lights. (Doc. 89 at 11). Metropolitan contends it incurred a charge of $16,027.63 to complete the work associated with the lighting. (Doc. 89 at 12). However, Metropolitan has not provided evidence of this payment, much less evidence that the payment covers the work (and only the work) that LEB was required to do in replacing emergency and exit lights. Similarly, Metropolitan contends that LEB failed to relocate a large number of smoke detectors pursuant to the Contract. (Doc. 89 at 12). But LEB presented evidence that it had been informed by its electrical subcontractor that the smoke detector

work had been performed. (Doc. 115 at 18). This testimony suffices to raise a genuine issue of material fact as to whether LEB willfully included in its lien a claim for work not performed.

### 3. Appliance Installation

Finally, Metropolitan argues that appliance installation was always within the scope of LEB's work, and that LEB tried to double-bill by submitting a change order of $19,200.00 for appliance installation. (Doc. 89 at 12). Because LEB's lien includes the amount of that particular change order, Metropolitan argues, the lien is fraudulent. However, LEB presented testimony that, due to a belief that another company would perform the installations, it had previously issued a *deductive* change order to remove that task from its scope of work. (Doc. 115 at 18). Thus there is at least an issue of material fact as to whether the appliance-installation change order of which Metropolitan complains was a correction, rather than a double billing.

## IV. Conclusion

In consideration of the foregoing, it is hereby **ORDERED AND ADJUDGED** that the second motion for summary judgment (Doc. 89) filed by Defendant The Metropolitan at Lake Eola, LLC is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on May 17, 2006.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party